IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| ROBERT WENDELL SMITH, | |
| Plaintiff, | CIVIL ACTION NO.: 5:21-cv-53 |
| v. | |
| ASHLEY WILSON; and JESUS TOVAR, | |
| Defendants. | |

## ORDER AND REPORT AND RECOMMENDATION

Before the Court are Plaintiff's Motion for Summary Judgment, doc. 39, Defendants' Motion for Summary Judgment, doc. 43, Plaintiff's Motion for Hearing, doc. 40, and Plaintiff's Motion for Leave to Amend, doc. 49. Defendants filed a Response to Plaintiff's Motion for Summary Judgment. Doc. 44. Plaintiff filed a Response to Defendants' Motion for Summary Judgment, doc. 50, and Defendants filed a Reply, doc. 55. For the reasons set forth below, I **DENY** Plaintiff's Motion for Hearing, doc. 40, and Plaintiff's Motion to Amend, doc. 49. I also **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment, doc. 39, and **GRANT** Defendants' Motion for Summary Judgment, doc. 43. Finally, I **RECOMMEND** the Court **DISMISS** Plaintiff's claims against Defendants, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

## PROCEDURAL HISTORY

Plaintiff, who is currently incarcerated at Dooly State Prison in Unadilla, Georgia, brought this action asserting claims under 42 U.S.C. § 1983 based on events that occurred when

Defendants arrested him in Douglas, Georgia, on April 21, 2021.  Doc. 1.  After conducting frivolity review, the Court dismissed Plaintiff's claims against Defendants Wooten, Cole, and Smith.  Doc. 15, 19.  However, the Court permitted Plaintiff to proceed with his Fourth Amendment claims against Defendants Wilson and Tovar and his deprivation-of-property claim against Defendant Wilson.  Docs. 15, 16.

## UNDISPUTED MATERIAL FACTS

Plaintiff did not submit a separate Statement of Material Facts ("SMF") with his Motion for Summary Judgment in accordance with Local Rule 56.1, and his Motion contains no citations to the record in accordance with Federal Rule of Civil Procedure 56(c).  See Doc. 39.  However, Plaintiff attached a short declaration, and the Court considers any specific, non-conclusory factual allegations in that declaration for purposes of summary judgment.  The Court also considers materials contained in Plaintiff's other various filings, including his "Supporting Documents for Summary Judgment,"[1] doc. 46, and his "Argument in Support for Summary Judgment," doc. 52.  Plaintiff's "Supporting Documents for Summary Judgment" include: Defendants' responses to Plaintiff's interrogatories, doc. 46 at 15–28; a Coffee County Sheriff's Incident Report, id. at 29–34; an arrest warrant, id. at 35; and a Georgia Department of Public Safety Incident Report, id. at 36–40.  Plaintiff's "Argument in Support for Summary Judgment" includes a July 5, 2022 Affidavit of Plaintiff.  Doc. 52 at 5–6.

Defendants' Motion for Summary Judgment contains a SMF and supporting materials. Defendants' SMF relies on the following: (1) deposition of Plaintiff; (2) Affidavit of Defendant Tovar; (3) Affidavit of Defendant Wilson; (4) Coffee Superior Court docket entry; (5) Coffee

---

[1] Plaintiff filed "Supporting Documents for Summary Judgment and Motion to Compel the Production of Requested Documents."  Doc. 46.  The Court addressed the motion to compel in an earlier Order.  Doc. 48.  Here, the Court considers the contents of the filing related to the parties' Motions for Summary Judgment.

2

County Sheriff's Incident Report; (6) Defendant Wilson's dashcam footage; (7) Defendant Wilson's body camera footage; and (8) Defendant Tovar's body camera footage.  Docs. 43-3 to 43-7.  Plaintiff responded to Defendants' SMF.  Docs. 50, 53.  Plaintiff's Response includes an Inmate Property Form, doc. 50 at 6, and an Inmate Intake Checklist, id at 7.

The facts Plaintiff admits are considered true for purposes of summary judgment.  See Scoggins v. Arrow Trucking Co., 92 F. Supp. 2d 1372, 1373 n.1 (S.D. Ga. 2000) (finding, under Local Rule 56.1 and Eleventh Circuit precedent, "all unopposed fact statements supported by the evidentiary materials of record are deemed admitted").  The Court notes, in disputing certain facts, Plaintiff failed to support his assertions with citations to the record.  Further, many of Plaintiff's "facts" are unsupported by the record and are disregarded for the purposed of summary judgment.  See Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (stating plaintiff's "conclusory assertions . . ., in the absence of supporting evidence, are insufficient to withstand summary judgment"); see also Williams v. Slack, 438 F. App'x 848, 849–50 (11th Cir. 2011) (finding no error in deeming defendants' material facts admitted where pro se prisoner failed to respond with specific citations to evidence and otherwise failed to state valid objections).  In light of these circumstances, the Court identifies the following undisputed, material facts for the purposes of evaluating the parties' Motions for Summary Judgment:

Plaintiff was arrested on April 21, 2021, after a high-speed pursuit and foot chase with police.  Doc. 43-1 at 1–2, 5.  Plaintiff led police on a high-speed pursuit, at night, through a city.  Id. at 3.  Plaintiff ran two red lights and drove down a two-lane road with oncoming traffic.  Id.  Plaintiff was traveling at a high rate of speed, at times more than 100 miles per hour.  Id.  Plaintiff continuously failed to maintain his lane.  Id.  He placed oncoming traffic at risk as he swerved into the oncoming traffic lane to avoid vehicles pulled over in his lane.  Id.  Plaintiff

also swerved from his lane into Defendant Wilson's lane in an attempt to cut him off or ram him. Id. The pursuit lasted almost five minutes. Id. at 2.

At the conclusion of the pursuit, Plaintiff exited his vehicle and fled into the woods. Id. The woods contained heavy underbrush and thorns. Id. at 4. Deputies, including Defendant Wilson, located Plaintiff in the woods and arrested him. Id. at 2. Defendant Tovar entered the woods a short time later to assist with the arrest. Id. Plaintiff was being secured in handcuffs as Defendant Tovar arrived. Id. Defendant Tovar took Plaintiff's arm from Defendant Wilson to help secure Plaintiff in handcuffs and escort him out of the woods. Id. Someone placed Plaintiff's wallet on the trunk of Defendant Wilson's vehicle. Id. at 5. Defendant Wilson never retrieved Plaintiff's wallet from the top of the trunk of his car before he left the scene. Id.

Following Plaintiff's apprehension, Plaintiff told deputies he had back pain caused by the arrest. Id. at 4. Plaintiff also told deputies he had degenerative disc disease. Id. A Georgia State Patrol Trooper, Sergeant Hardy, arrived. Id. at 4. Sergeant Hardy gave Plaintiff a field sobriety test. Id. Plaintiff told Sergeant Hardy he (Plaintiff) had a back injury but confirmed the injury did not prevent him from walking or standing. Id. Plaintiff did not appear to be in significant discomfort. Id. at 5. All of Plaintiff's injuries appeared to be superficial. Id. at 4. Defendant Wilson transported Plaintiff to the Coffee Regional Medical Center as a precaution due to his complaint of back pain. Id. at 5. Plaintiff was cleared by an emergency room doctor. Id. Plaintiff was charged with numerous crimes, including driving under the influence. Id. at 3, 5. Those charges are still pending. Id. at 5.

**DISCUSSION**

I.  **Plaintiff's Motion for Summary Judgment**

Plaintiff's Motion for Summary Judgment does not contain a separate statement of material facts ("SMF"). Doc. 39. Local Rule 56.1 provides a party moving for summary judgment must include "a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof." Local R. 56.1. With his Motion, Plaintiff includes a declaration, where he generally references jail documents, a booking photo, and body camera footage, without citations to such evidence in the record. Id. at 3–4. Federal Rule of Civil Procedure 56(c)(4) requires such declarations in support of a motion for summary judgment "be made on personal knowledge" and "set out facts that would be admissible in evidence." Plaintiff's description of the evidence in his declaration does not meet these requirements under the Federal Rules. Furthermore, his declaration does not meet the requirements for a SMF under the Local Rules. Although Plaintiff vaguely refers to some evidence, he does not submit any evidence into the record or otherwise cite to the record.

Because Plaintiff failed to adhere to Local Rule 56.1, his Motion for Summary Judgment should be denied. See Daker v. Owens, No. 6:14-CV-47, 2021 WL 1606052, at *2 (S.D. Ga. Feb. 9, 2021), *report and recommendation adopted*, 2021 WL 983136 (S.D. Ga. Mar. 16, 2021) (denying a pro se plaintiff's motion for summary judgment because his motion did not comply with the Court's Local Rules); Jackson v. Oral, No. 4:19-CV-88, 2020 WL 1081700, at *2 (N.D. Fla. Jan. 13, 2020), *report and recommendation adopted sub nom.* Jackson v. Red Hills Oral & Facial Surgery, P.A., 2020 WL 1078760 (N.D. Fla. Mar. 6, 2020) ("Plaintiff's failure to comply with [the court's local rules] is itself a sufficient reason to deny Plaintiff's motion for partial

5

summary judgment."); Kemp v. Ga. State Univ. Admissions, No. 1:07-CV-0212, 2008 WL 11320118, at *1 n.2 (N.D. Ga. June 16, 2008) (striking a pro se litigant's motion for summary judgment because he did not have a separate statement of material facts, which was required by the court's local rules). In addition to failing to comply with the Local Rules, Plaintiff's Motion for Summary Judgment is woefully in adequate, as it fails entirely to show Plaintiff is entitled to judgment as a matter of law on any aspect of his claims in this case. Accordingly, I **RECOMMEND** the Court **DENY without prejudice** Plaintiff's Motion for Summary Judgment.

**II.     Plaintiff's Motion for Hearing**

Plaintiff requests a hearing on his Motion for Summary Judgment. Doc. 40. Having considered the parties' fully briefed submissions on these matters, the Court finds a hearing would not be helpful and is unnecessary. Accordingly, the Court **DENIES** Plaintiff's Motion for Hearing.

**III.    Defendants' Motion for Summary Judgment**

Defendants argue they are entitled to summary judgment because the force used to apprehend Plaintiff was reasonable under the Fourth Amendment, they are entitled to qualified immunity, Plaintiff had a post-deprivation remedy for the loss of property under Georgia law, and Plaintiff's claims are barred by the Younger abstention doctrine. Doc. 43-2 at 3–16.

**A.     Defendants Used Reasonable Force**

Plaintiff brings a Fourth Amendment claim against Defendants for using excessive force when arresting him. Doc. 1 at 3–8. Defendants argue their use of force was objectively reasonable under the Fourth Amendment. Doc. 43-2 at 3–9.

### *1.   Legal standard.*

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing Graham v. Connor, 490 U.S. 386, 394–95 (1989)). However, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). Any use of force must be reasonable, and "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force." Alvin v. Veal, CV417-206, 2020 WL 1061285 (S.D. Ga. Feb. 6, 2020) (quoting Scott v. Palmer, 210 F. Supp. 3d 1303, 1313 (N.D. Ala. 2016)). "The reasonableness inquiry [asks] whether the officer's actions are objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1248 (11th Cir. 2004) (internal quotations omitted). To determine whether the amount of force Defendants used was proper, the Court must ask whether a reasonable officer would believe the level of force used was necessary under the circumstances. Lee, 284 F.3d at 1197. Whether an officer's use of force was excessive or reasonable "is a 'pure question of law,' decided by the court." Stephens v. DeGiovanni, 852 F.3d 1298, 1321 (11th Cir. 2017) (quoting Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013)).

This inquiry requires courts to "slosh [their] way through the fact bound morass of 'reasonableness.'" Scott v. Harris, 550 U.S. 372, 383 (2007). Consequently, a court must "look at the fact pattern from the perspective of a reasonable officer on the scene with knowledge of the attendant circumstances and facts, and balance the risk of bodily harm to the suspect against

7

the gravity of the threat the officer sought to eliminate." McCullough v. Antolini, 559 F.3d 1201, 1206 (11th Cir. 2009); see also Graham, 490 U.S. at 396 (Use of force must be judged "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."). Additionally, a court must consider that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 397.

"In Graham, the Supreme Court articulated three factors to guide a reviewing court's determination whether an officer's actions were reasonable under the circumstances. In particular, the court must consider 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Spencer v. City of Orlando, 725 F. App'x 928, 931 (11th Cir. 2018) (citing Graham, 490 U.S. at 396). This is a non-exhaustive list of factors for courts to consider. Charles v. Johnson, 18 F.4th 686, 699 (11th Cir. 2021). In addition to the Graham factors, courts in the Eleventh Circuit routinely consider: "(1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted." Stephens, 852 F.3d at 1324 (internal quotations omitted); see also Mobley v. Palm Beach Cnty. Sheriff Dep't, 783 F.3d 1347, 1353 (11th Cir. 2015); Glasscox v. Argo, City of, 903 F.3d 1207, 1214 (11th Cir. 2018); Pequeno v. Seminole County, 1:20-CV-32, 2022 WL 5165147, at *9 (M.D. Ga. Aug. 24, 2022), *appeal docketed sub nom*. Pequeno v. Carr, No. 22-13257 (11th Cir. Sep. 22, 2022). In applying these factors, "[d]etermining whether an exercise of force was reasonable cannot be reduced to a mechanical exercise, but 'requires careful attention to the facts and circumstances of each particular case.'" Montanez v. City of Orlando, 678 F. App'x 905, 910 (11th Cir. 2017) (citing Graham 490 U.S. at 396). Accordingly,

"[i]f an officer reasonably, but mistakenly, believes that one of the factors relevant to the merits of the constitutional excessive-force claim is present, the officer is justified in using more force than in fact was needed."  Williams v. Deal, 659 F. App'x 580, 597–98 (11th Cir. 2016).

### 2. *Analysis of excessive-force claim.*

All three Graham factors weigh in Defendants' favor.  The first Graham factor, the severity of the crime at issue, favors Defendants because a suspect's reckless, dangerous driving justifies the use of force to make an arrest.  Glasscox, 903 F.3d at 1215.  Defendants show Plaintiff was driving recklessly at speeds over 100 miles per hour to elude police officers, which constitutes a felony under Georgia law.  Doc. 43-1 at 3; see Williams v. Sirmons, 307 F. App'x 354 (11th Cir. 2009) ("[E]luding an officer—a felony under Florida law—is a very serious crime.").  The second Graham factor, whether Plaintiff posed a threat to others' safety, likewise weighs in favor of Defendants.  See Mongeau v. Jacksonville Sheriff's Off., 197 F. App'x 847, 850 (11th Cir. 2006) ("Plaintiff's recklessness in evading capture clearly posed great danger to both the officers pursuing him and numerous civilians.  He ran traffic lights, sped, and even entered the highway going the wrong direction.  This conduct reasonably led the officers to believe that [plaintiff] had little regard for his own life or others.").  The undisputed material facts show Plaintiff ran stop lights, crossed into oncoming traffic, and swerved toward Defendant Wilson's police car.

The third Graham factor, whether Plaintiff was resisting or evading arrest, also weighs in favor of Defendants.  The undisputed facts show Plaintiff not only attempted to evade police arrest by car, but he eventually exited his car and fled from police on foot.  Plaintiff explains, "[A] fear came over me and I felt like my life was in danger so I did not stop and I proceeded to my destination in hopes of safety . . . ."  Doc. 52 at 5.  Plaintiff also states, "I don't recall these

officers identifying themselves before they attacked me." Doc. 50 at 2.  To the extent Plaintiff argues he did not intend to evade or resist the police because he was scared or unsure of their identity, the Court must evaluate this factor from the perspective of police.  "The only perspective that counts is that of a reasonable officer on the scene at the time the events unfolded."  Garczynski v. Bradshaw, 573 F.3d 1158, 1166 (11th Cir. 2009) (citing Graham, 490 U.S. at 396).  The undisputed facts show Plaintiff evaded police by driving recklessly at high speeds, regardless of his subjective beliefs at the time.  Thus, the Court finds Plaintiff resisted and evaded arrest, so the third Graham factor falls in favor of Defendants.

Plaintiff fails to support his allegation Defendants used unreasonable force against him after his resistance ended.  Plaintiff states he had "already surrendered" when Defendants continued their use of force against him.  Doc. 39 at 3; Doc. 52 at 6.  Specifically, Plaintiff states Defendant Tovar "jumped on my back and was choking me while Wilson was restraining me and trying to handcuff me."  Doc. 52 at 5; see also Doc. 1 at 6 ("Tovar and Wilson jumped on my back, Wilson was restraining me while Tovar proceeded to choke me.").  On the other hand, Defendants deny Defendant Tovar jumped on Plaintiff or choked him.  Doc. 43-1 at 2.  The Court accepts Plaintiff's declarations as true, unless obviously contradicted by Defendants' video evidence.  Shaw v. City of Selma, 884 F.3d 1093, 1089 (11th Cir. 2018).  The video exhibits Defendants submitted show the entirety of Defendant Tovar's interaction with Plaintiff.  At no time does the video reveal Defendant Tovar jumped on Plaintiff or choked him.  In his Response to Defendants' Motion for Summary Judgment, Plaintiff cites marks in the video at which someone "pushed me down" and "slap[ped] me."  Doc. 50 at 4.  However, the video evidence does not support Plaintiff's characterizations.  Plaintiff also cites portions of the video evidence he asserts show the officers "jumped," "hit," or "choked" Plaintiff.  Id.  But the video evidence

10

Plaintiff relies on shows the officers are discussing the altercation generally and Plaintiff's own assertion officers attacked him. These portions of the video do not document any unreasonable force, and the officers' comments do not suggest the officers agreed with Plaintiff's assertions. Ultimately, these portions of the videos do not demonstrate the officers involved used an unlawful amount of force when arresting Plaintiff. Therefore, Plaintiff fails to create a genuine dispute of material fact as to whether Defendants used unreasonable force after he ceased evasion and resistance.

The extent of Plaintiff's injuries also supports Defendants' position. Plaintiff states his "back and neck were injured," and he "also received multiple cuts, scratches, and bruises." Doc. 1 at 6. In support, he points to his booking photo, "depicting visible injury on forehead, facial [sic], and throat." Doc. 39 at 4. However, Plaintiff did not submit a booking photo with his Motion for Summary Judgment or in his Response to Defendants' Motion for Summary Judgment. Further, Plaintiff submitted no other evidence of injury. On the other hand, Defendants assert Plaintiff's facial injuries were superficial and likely the result of thorns and underbrush in the woods where Plaintiff fled. Doc. 43-2 at 8–9. Defendants' video exhibits support this assertion. Defendants acknowledge Plaintiff complained of back pain at the scene of his arrest but show Plaintiff had a previous history of back pain. Id. at 9. Further, police took Plaintiff to the Coffee Regional Medical Center for his back pain, and he was cleared by an emergency room doctor. Id. The evidence supports Defendants' description of Plaintiff's injuries as minor, and this cuts in favor of Defendants.

Plaintiff cites Saunders v. Duke, 766 F.3d 1262 (11th Cir. 2014), arguing "a plaintiff who suffers only de minimis injuries does not necessarily lack a claim for excessive force under § 1983." Doc. 50 at 3. The plaintiff in Saunders alleged police officers slammed his head

against the pavement after he was handcuffed and while lying prone on the ground. Id. at 1265. Certainly, the principle of de minimis force and a lack of injury cannot "immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat." Id. at 1269–70. However, considering the totality of the circumstances here, including the Graham factor analysis above, Plaintiff's lack of serious injury supports Defendants' argument their use of force was reasonable.

In sum, all the Graham factors, along with the extent of Plaintiff's injuries, fall in favor of Defendants. Thus, the force Defendants used against Plaintiff was reasonable and did not violate the Fourth Amendment.

### 3. *Qualified immunity.*

Defendants argue they are entitled to qualified immunity because their use of force was appropriate. Doc. 43-2 at 11–12. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). For qualified immunity to apply, the official must establish "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." McCullough, 559 F.3d at 1205 (citation omitted). If the official shows he was acting within the scope of his discretionary authority, then the burden shifts to the plaintiff to "show that qualified immunity does not apply. See Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009) (quoting Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). Specifically, the plaintiff has the burden to show "(1) that the officer violated a federal statutory or constitutional right, and (2) that the unlawfulness of the officer's conduct was clearly established

at the time." Wade v. Daniels, 36 F.4th 1318, 1323 (11th Cir. 2022) (citing Williams v. Aguirre, 965 F.3d 1147, 1156 (11th Cir. 2020)).

Plaintiff does not dispute whether Defendants were acting within the scope of their discretionary authority when they pursued and arrested Plaintiff. See Doc. 43-2 at 11. Therefore, the burden shifts to Plaintiff. As explained above, Plaintiff has not shown any violation of his Fourth Amendment rights. Furthermore, Plaintiff has not shown the purported unlawfulness of Defendants' conduct was clearly established at the time. Accordingly, Defendants are entitled to qualified immunity, and I **RECOMMEND** the Court **DISMISS** Plaintiff's Fourth Amendment excessive-force claims against Defendants for this additional reason.

**B.     Plaintiff's Deprivation-of-Property Claim**

Defendants argue Plaintiff's deprivation-of-property claim fails because he has a post-deprivation property remedy available under Georgia law. Doc. 43-2 at 13. Plaintiff does not provide any substantive response to this argument. Plaintiff states Defendants took his wallet, including $200.00 in cash and his credit or debit cards. Doc. 1 at 6; Doc. 52 at 5–6. This claim implicates his right to procedural due process. A § 1983 action alleging a procedural due process cause violation requires proof of three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process." Doe v. Fla. Bar, 630 F.3d 1336, 1342 (11th Cir. 20011) (quoting Cryder v. Oxendine, 24 F.3d 175, 177

(11th Cir. 1994)).  As to the third element, it is recognized that "[d]ue process is a flexible concept that varies with the particular situation."  Cyder, 24 F.3d at 177.

Determining whether due process is satisfied requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 178 (quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).  However, even if a state actor has continued to wrongfully retain a person's personal property, "no procedural due process violation has occurred if a meaningful postdeprivation remedy for the loss is available."  Case v. Eslinger, 555 F.3d 1317, 1331 (11th Cir. 2009) (quoting Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991)).  "[T]he state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy."  Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Georgia law provide a post-deprivation remedy through an action of personal property, which "is a sufficient postdeprivation remedy when it extends to unauthorized seizures of personal property by state officers."  Case, 555 F.3d at 1331.  Plaintiff's property confiscation claim arises under O.C.G.A. § 51-10-1.  Lindsey v. Storey, 936 F.2d 554, 561 (11th Cir. 1991).  This statue provides, "The owner of personalty is entitled to its possession," and "[a]ny deprivation of such possession is a tort for which an action lies."  O.C.G.A. § 51-10-1.  The Eleventh Circuit has noted, "This statutory provision covers the unauthorized seizure of personal property by police officers.  Therefore, the state has provided an adequate postdeprivation remedy when a plaintiff claims the state has retained his personal property without due process

of law." Lindsey, 936 F.2d at 561 (quoting Byrd v. Stewart, 811 F.2d 554, 555 n.1 (11th Cir. 1987)); see also Allen v. Peal, No. CV 312-007, 2012 WL 2872638, at *2–3 (S.D. Ga. June 18, 2012) (dismissing a due process claim for lost or seized personal property because O.C.G.A. § 51-10-1 provides an adequate post-deprivation remedy).

Consequently, Plaintiff's claim regarding the alleged confiscation or deprivation of his property comprises a matter for determination by the courts of the State of Georgia. Therefore, Plaintiff may not present this claim to this Court under § 1983. Accordingly, I **RECOMMEND** the Court **DISMISS** Plaintiff's deprivation-of-property claim.[2]

## IV. Plaintiff's Motion for Leave to Amend

Plaintiff filed a Motion for Leave to Amend his Complaint on July 25, 2022.[3] Doc. 49. Defendants filed a Response in opposition. Doc. 57. Plaintiff's Motion to for Leave to Amend was filed more than four months after the scheduling notice deadline, more than two months after the close of discovery, and over a month after Defendants moved for summary judgment. See Docs. 25, 43. Under Federal Rule of Civil Procedure 16(b)(4), the Court's schedule and deadlines may be modified only for good cause and with the judge's consent. This good cause standard "precludes modification unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1418 (11th Cir. 1998) (quoting Fed. R. Civ. P. 16 advisory committee's note). Regardless of Rule 16's good cause

---

[2] Defendants also seek summary judgment on Plaintiff's § 1983 claims on the grounds the Younger abstention doctrine bars them. Doc. 43-2 at 13–16. Because the Court concludes Plaintiff's claims fail on other grounds, it is unnecessary to address this argument. See Barrera-Avila v. Watts, No. 2:16-cv-141, 2017 WL 933123, at *9 (S.D. Ga. Mar. 8, 2017) ("As these rulings would dispose of all of Plaintiff's claims, the Court need not address the remaining portions of Defendants' Motion."), *report and recommendation adopted*, 2017 WL 1240763 (S.D. Ga. Mar. 31, 2017).

[3] The Court considers the dates on which Plaintiff dated his documents as the date he filed them, not the date they were docketed, applying the prison mailbox rule. See Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001).

standard, a court can deny leave to amend where there is substantial ground for doing so, such as "undue delay, bad faith or dilatory motive, undue prejudice . . . [or] futility of amendment." Burger King Corp. v. Weaver, 169 F.3d 1310, 1319 (11th Cir. 1999) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Plaintiff argues he discovered new evidence in Defendants' Motion for Summary Judgment. Doc. 49 at 1. Specifically, he says, "It has been brought to my attention that there are more parties in this case . . . ," and he seeks leave to add new Defendants. Id. at 1–2. However, Plaintiff fails to show good cause, as he fails to identify the "new evidence" or how it supports new allegations against new Defendants. Further, he makes no showing of diligence in discovering the purportedly new evidence during the scheduled discovery period. Defendants point out they produced their body camera video evidence to Plaintiff on April 20, 2022, and showed him these videos during their deposition of Plaintiff on May 13, 2022. Doc. 57 at 3–4. Defendants are correct these videos cannot be considered new evidence in support of good cause for Plaintiff's July 25, 2022 Motion for Leave to Amend. The Court cannot identify any other source of "new" evidence in support of Plaintiff's proposed of amendments, and thus, finds no good cause Plaintiff's untimely Motion to Amend.

Plaintiff's Motion to Amend is untimely, without any adequate justification, and would present undue prejudice to Defendants. See Diaz v. Burchette, 585 F. App'x 968 (11th Cir. 2014) (upholding district court's decision "that amending the complaint after the close of discovery and after [defendant] had filed its motion for summary judgment would have resulted in considerable prejudice to [defendant] and unduly delayed the proceedings."); Aspen Am. Ins. Co. v. Tasal, LLC, Case No. 6:20-cv-875-Orl-40DCI, 2021 WL 4935769, at *11 (M.D. Fla. Feb. 5, 2021) ("Allowing plaintiff to make this late amendment necessarily requires the court to

reopen discovery for [defendant's] benefit, which increases litigation costs and the expenditure of judicial resources."). If Plaintiff were to add parties at this stage in the litigation, the Court would have to reopen discovery, now more than seven months after the close of discovery. Defendants would also likely be forced to file another motion for summary judgment. Additionally, Plaintiff's request to amend is based solely on the notion "there are more parties involved in this case that I was unaware of." Doc. 49 at 1. As explained above, the undisputed material facts demonstrate Defendants are entitled to summary judgment on Plaintiff's substantive claims. Adding more parties (ostensibly, other officers who participated in the same underlying facts) would be futile at this point. This is an additional reason for denial of Plaintiff's request for leave to amend.

Because Plaintiff does not show good cause for leave to amend his Complaint outside of the Court's Scheduling Notice, the Court **DENIES** his Motion for Leave to Amend.

## V.   Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify an appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or

argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  An *in forma pauperis* action is frivolous and not brought in good faith if it is "without arguable merit either in law or fact."  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 4:07-cv-085, 40:3-cr-001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of the parties' Motions for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the reasons set forth above, I **DENY** Plaintiff's Motion for Hearing and Plaintiff's Motion to Amend.  I also **RECOMMEND** the Court **DENY** Plaintiff's Motion for Summary Judgment and **GRANT** Defendants' Motion for Summary Judgment.  Finally, I **RECOMMEND** the Court **DISMISS** any claims against Defendants, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment, and **DENY** Plaintiff *in forma pauperis* status on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to

challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of February, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA